Argued and submitted October 3, affirmed December 15, 1980

# BOUSKA,
## *Respondent,*
### *v.*
# WRIGHT,
## *Appellant.*

## (No. L78-1112, CA 16110)

621 P2d 69

Nick Chaivoe, Portland, argued the cause for appellant. With him on the brief was David S. Paull, Portland.

Gary L. Hill, Roseburg, argued the cause for respondent. With him on the brief was Slocum & Hill, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Plaintiff brought an action against defendant, a former employee, alleging lost profits as damages for breach of a non-competition clause in an employment contract. The jury found on special interrogatories that the defendant had breached the contract, and plaintiff had a judgment for $4,372.80. Plaintiff joined in his complaint a suit to enjoin defendant from doing business in violation of the contract. After the jury's verdict, the court granted an injunction. Defendant recovered a judgment for $700 on his counterclaim for unpaid wages, together with a penalty of $700 under ORS 652.150.

Defendant appeals and tenders three assignments of error, only two of which require decision on the merits.[1]

Plaintiff had an exclusive license to use a bookkeeping system designed for service station operations. He hired defendant as a "field consultant" with the responsibility for servicing existing clients and developing new ones. Defendant's service was completely successful and satisfactory. After about three years plaintiff and defendant began to negotiate for defendant to buy plaintiff's Douglas County business. When those negotiations foundered, defendant quit. Shortly thereafter defendant and his wife opened their own bookkeeping and accounting business, and plaintiff sued. The complaint alleged that defendant had breached a written employment contract by which he had agreed not to compete with plaintiff for three years after terminating employment.

At the trial plaintiff first offered in evidence a set of miscellaneous documents consisting of the license agreement for the bookkeeping system, a number of written policies prepared by the licensor and a blank form employment contract. The exhibit was received without objection. Plaintiff then offered in evidence a photostatic copy of what purported to be the employment agreement in issue.

---

[1] Defendant's third assignment of error asserts "that the trial court erred in specifically enforcing the agreement *** because the agreement lacked consideration and because plaintiff himself breached the agreement." The first ground is disposed of under the second assignment of error, and defendant concedes that the second was not urged at trial. We will not consider it.

Defendant objected to its admission on the ground that it was not the "best evidence." Plaintiff then testified about his unsuccessful search for the original[2] in his own files, his request to the licensor's Seattle regional office for a search of the files and the failure to find the contract there and his similarly unproductive request to the licensor's home office in Santa Barbara, California. The exhibit was then received; it was in some respects substantially illegible, so plaintiff had attached to it a copy of the blank employment agreement form that was a part of the first exhibit.[3] Defendant relies on ORS 41.610[4] and ORS 41.640(1)(b)[5] and argues that plaintiff totally failed to demonstrate that the absence of the original was not due to his default or neglect.

■■   The trial court was satisfied from plaintiff's testimony about his efforts to find the original that the statutory conditions for admission of the secondary evidence were

_____

[2] The photostatic copy, as well as the copy attached to the first exhibit, suggested that there had been duplicate executed originals. Neither was produced. There was no testimony that duplicate originals were in fact executed. How plaintiff happened to have a photostatic copy of the agreement but not the original was never explained.

[3] Defendant denied signing the agreement or, if he did sign it at some time, that he had known and understood its contents. He also argued that if he did sign it, it was done much later than it showed on its face. Aside from the question of the admissibility of the exhibit, the issues relating to whether there was a meeting of the minds, a written agreement, consideration and other matters concerning the formal validity of the agreement were resolved by the jury under instructions to which no exceptions were taken. Defendant's post-trial efforts to prove that his purported signature was a forgery present no issue on appeal.

[4] ORS 41.610:

"The original writing shall be produced and proved except as provided in ORS 41.640. If the writing is in the custody of the adverse party and he fails to produce it after reasonable notice to do so, the contents of the writing may be proved as in the case of its loss. However the notice to produce it is not necessary where the writing itself is a notice or where it has been wrongfully obtained or withheld by the adverse party."

[5] ORS 41.640(1)(b):

"(1) There shall be no evidence of the contents of a writing, other than the writing itself, except:

"* * * * *

"(b) When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default."

established. That particular determination generally lies within a trial court's discretion. *Stipe v. First National Bank,* 208 Or 251, 262, 301 P2d 175 (1956). This is not an instance where we can say the evidence furnished no basis for the court's exercise of that discretion. *See Velasquez v. Freeman,* 244 Or 40, 415 P2d 514 (1966).

■     The second assignment of error is that the employment agreement was unenforceable for lack of consideration. As best we can determine, if this issue was effectively tendered at all, it was done in a pre-trial memorandum wherein defendant said:

> "*** The evidence will also reveal that the alleged agreement was entered into after employment had commenced and that the salary and benefits that were to accrue to Defendant had already been agreed upon.

> "Testimony at trial will also reveal that there was no consideration granted to the defendant in return for his alleged acceptance of the agreement and the harsh restrictions imposed therein. ***"

It is by no means clear that the matter was raised again in the trial. Defendant denied that he ever signed the agreement at all. The jury was instructed[6] on what plaintiff had to prove about the existence of the agreement before it could find for him.[7] No exceptions were taken.

---

[6] The requested instructions are not in the trial court file.

[7] "Now, turning to the issues. The first issue in this case is whether the parties entered into an enforceable noncompetition contract, and this issue, that is, the first issue, subdivides into two issues. The first subissue, then, is did they reach an agreement[?] And then, if you find that they did, the second subissue is [is] the agreement that they reached an agreement that the law considers valid and enforceable[?]

"On that first subissue, that is, whether they reached an agreement at all, before there can be a valid contract there must be a meeting of the minds as to all of its terms. Nothing can be left for future negotiations, and if any portion of the contract is not agreed upon or if no method is agreed upon by which such term or provision can be settled, there is no contract. That is to say there must be a meeting of the minds as to the obligations each party assumes under the contract before it can be said that a contract exists.

"Now, under these instructions if you find that the parties did reach an agreement, including a noncompetition clause, then you must determine the subissue whether the agreement reached is one which the law considers valid and enforceable.

Defendant now claims that because he started work on April 1, 1975, and the agreement is dated April 4, 1975, plaintiff had to prove a separate, new consideration for the obligations undertaken thereby.[8] He relies on *McCombs, et al v. McClelland,* 223 Or 475, 354 P2d 311 (1960) and *Mail-Well Envelope Co. v. Saley,* 262 Or 143, 497 P2d 364 (1972), but they are inapposite. In each of those cases it was clear that the non-competition agreement was separate from the original employment agreement. Here the evidence was sufficient for the jury to conclude that the promise not to compete and the initial employment were contemporaneous. So, even assuming the issue was before the trial court, it was properly disposed of in the jury trial phase of the case, and the court was entitled to make the same finding in determining to give equitable relief.

Affirmed.

"In that regard, before a noncompetition agreement will be enforced, consideration for such an agreement must not be grossly inadequate and its terms must not otherwise be unfair. In that regard, just nominal consideration is not enough. Three things are essential to the validity of a contract in restraint of trade, which a noncompetition agreement is. First, it must be partial or reasonably restricted in its operation in respect to time and place. Second, it must be based upon some good consideration, and, third, it must be reasonable, that is, it shall afford only a fair protection to the interests of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public at large.

"* * * * *

"The alleged employment contract in consideration here involves a post-termination noncompetition agreement. If you find that the Defendant entered into the said employment contract and that the contract was reasonable and was so entered into pursuant to a good and valid consideration, as those terms have been defined for you, then you must find that the Defendant was bound by the terms of the contract, including the noncompetition provision. On the other hand, if you find that the Plaintiff has failed to prove by a preponderance of the evidence that the parties entered into an enforceable noncompetition contract as claimed, then your answer to question one on the verdict would be no and you would go directly to the Defendant's counterclaim for alleged unpaid wages.

"As I say, the burden of proof is on the Plaintiff who has claimed the existence of this contract, to prove its existence and its enforceability under the law. Now, if you find that the Plaintiff has sustained his burden of proof to show that the parties entered into a contract and that under the rules that I have given you it was and is an enforceable contract, then the next issue for you to decide is whether or not the Defendant breached the alleged contract. ***"

[8] The purported agreement here was made before the effective date of ORS 653.295.